# *United States District Court*

_____**MIDDLE**_____ DISTRICT OF _____**ALABAMA**_____

| | |
|---|---|
| **In the matter of the Search of**<br>(Name, address or brief description of person, property or premises to be searched)<br><br>**3103 Elder Street**<br>**Montgomery, AL** | **APPLICATION AND AFFIDAVIT**<br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: 2:06mj 8 -SRW |

I _____David E. Henderson_____ being duly sworn depose and say:

I am an agent with __Immigration and Customs Enforcement__ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**3103 Elder Street**
**Montgomery, AL**

in the _____Middle_____ District of _____Alabama_____
there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment B**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

**property that constitutes evidence of the commission of a criminal offense,**

concerning a violation of Title ___18___ United States Code, Section(s)__2252 & 2252A__

The facts to support the issuance of a Search Warrant are as follows: **See Attached Affidavit**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

January 19, 2006 _____ at __Montgomery, Alabama_____
Date                                                                         City and State

SUSAN RUSS WALKER
United States Magistrate Judge                     _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

**AFFIDAVIT**

I, David E. Henderson, being duly sworn, depose and state:

1. I am a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), presently assigned to the Office of the Resident Agent in Charge, Mobile, Alabama (RAC/Mobile) stationed in Montgomery, Alabama. I have been employed as an ICE Special Agent for approximately five years. As part of my daily duties as an ICE agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and as part of my duties have observed and reviewed examples of child pornography (as defined in 18 U.S.C. § 2256)[1] in all forms of media, including computer media. Prior to becoming an ICE Special Agent, I was

---

[1] "Child Pornography means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8).

1

employed as a Police officer for the city of Montgomery, Alabama for approximately six years.

2. This Affidavit is made in support of an application for a warrant to search the entire premises located at 3103 Elder Street, Montgomery, Alabama (the "SUBJECT PREMISES"). The SUBJECT PREMISES to be searched is more particularly described in Attachment "A" of this affidavit.

3. The purpose of this application is to seize evidence of violations of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B), which make it a crime to possess child pornography, and violations of 18 U.S.C. §§ 2252(a)(2) and 2252A(a)(2), which make it a crime to receive child pornography in interstate commerce by computer and §§ 2252(a)(1) and 2252A(a)(1), which make it a crime to transport or ship child pornography in interstate commerce.

4. I am familiar with the information contained in this Affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography.

5. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252 and 2252A are located at the SUBJECT PREMISES and within a computer and related peripherals, and computer media found at the SUBJECT PREMISES. Where statements of others are set forth

in this Affidavit, they are set forth in substance and in part.

6. As a result of the investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, including 18 U.S.C. §§ 2252 and 2252A, are present at the SUBJECT PREMISES.

7. The investigation has revealed that Christopher LEE of Montgomery, Alabama, shared and distributed, via the Internet, multiple images depicting prepubescent children engaged in sexually explicit activity, and that there is probable cause to believe that LEE is in possession of child pornography and distributed the aforementioned material using a computer that is located at the SUBJECT PREMISES.

8. On December 23, 2004, U.S. Immigration and Customs Enforcement, Cyber Crimes Center (C3), received information from the German National Police (BKA) via the ICE Attaché office in Frankfurt, Germany concerning the alleged distribution of images of child pornography via the Internet. The information obtained from the BKA is part of an ongoing operation code-named Operation Kinderschutz which is an investigation initiated to identify individuals who distribute and receive images of child pornography via the Internet.

9. According to the information received from Operation Kinderschutz, on December 14, 2004, an email address gabon@hushmail.com posted two (2) images of child pornography to a newsgroup maintained by USENETSERVER.COM via the Internet.

10. Image 1, labeled as ashan_12yo-12.jpg, depicts what appears to be a prepubescent male lying on his stomach on a bed wearing a shirt and shorts or underwear. In the

3

image the shorts or underwear are located at the prepubescent males knees exposing his rectal and genital areas.

11. Image 2, labeled as myn0380.jpg, depicts what appears to be two (2) prepubescent males wearing only shorts. In the image the two prepubescent males are exposing their genitals by holding them outside of their shorts.

12. On January 27, 2005, a Summons was issued by ICE Cyber Crimes Center to USENETSERVER.COM requesting subscriber information related to gabon@hushmail.com. On January 28, 2005, USENETSERVER.COM provided an Internet Protocol (IP) address of 24.214.182.209 related to gabon@hushmail.com and advised that the IP address is maintained by Knology Holdings.

13. On January 28, 2005, a summons was then issued to Knology Holdings requesting subscriber information related to IP address 24.214.182.209 on December 14, 2004 and December 20, 2004. On February 5, 2005, Knology Holdings provided information that the account related to IP address 24.214.182.209 was subscribed to by Christopher LEE at 3103 Elder Street in Montgomery, Alabama.

14. ICE agents then requested the assistance of the U.S. Postal Inspectors in conducting a mail cover for the SUBJECT PREMISES. Results of the mail cover revealed that there was mail delivered to the SUBJECT PREMISES in the name of Christopher LEE.

15. On January 19, 2006, I along with agents from the Federal Bureau of Investigation (FBI), Montgomery Police

4

Department and Alabama Bureau of Investigations (ABI) made contact with LEE at the SUBJECT PREMISES. LEE advised that he did have a computer but his Internet access had recently been disconnected. Additionally, I observed a Hewlett Packard computer in LEE's room. LEE originally granted oral consent to search his computer but prior to conducting the search he retracted his consent and stated that he wished to speak with his aunt.

16. Based on your Affiant's previous investigative experience related to child pornography investigations, including investigations of subjects who distributed child pornography via the Internet that I have been the investigating officer of, your Affiant is aware that individuals who share and distribute child pornography are often child pornography collectors who have escalated their activity from anonymously obtaining free images of child pornography widely available in various locations on the Internet to proactively distributing images they have collected, often for the purposes of trading images of child pornography with others as a method of adding to their own vast collections. Individuals involved in the distribution of child pornography are also known to continue to obtain free images of child pornography found elsewhere on the Internet, e.g. Newsgroups and "free" Web sites.

17. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there

5

are certain characteristics common to individuals involved in the receipt and collection of child pornography:

 a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

 b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

 c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence,

books, tape recordings, mailing lists, child erotica,[2] and videotapes for many years.

    d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

    e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

    f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

---

[2] "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

18. Based on the above information, there is probable cause to believe that 18 U.S.C. §§ 2252 and 2252A, which, among other things, make it a federal crime for any person to knowingly possess and/or receive child pornography, have been violated, and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located at the SUBJECT PREMISES. This Affiant requests authority to seize such material.

19. Based upon the foregoing, this Affiant respectfully requests that this Court issue a search warrant for the SUBJECT PREMISES, located at 3103 Elder Street, Montgomery, Alabama, and more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

_David E. Henderson_
David E. Henderson
Special Agent, ICE

Subscribed and sworn before me this 19th of January 2006

_Susan Russ Walker_
SUSAN RUSS WALKER
United States Magistrate Judge

# ATTACHMENT "A"
# SUBJECT PREMISES

The SUBJECT PREMISES is described as a single family residence at the southwest corner of the intersection of Elder Street and Selman Street located within the city limits of Montgomery, Alabama. The SUBJECT PREMISES is described as a red brick house with the numbers "3103" affixed to the front of the residence.

# ATTACHMENT "B"
# PROPERTY TO BE SEIZED

1. Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, CD-ROMs, CD-RWs, CD-Rs, DVDs, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, or other visual depictions of such Graphic Interchange format equipment that may be or are used to depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography and the data within the aforesaid objects relating to said materials.

2. Correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct.

3. Visual depictions of minors engaged in sexually explicit conduct in whatever form, including, but not limited to books, magazines, photographs, negatives, films or videocassettes containing such images.

4. Envelopes, letters and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages that:

    a. Offer to transmit through interstate or foreign commerce, including by United States mail or by computer, visual depictions of minors engaged in sexually explicit conduct;
    b. Solicit minors to engage in sexually explicit conduct for the purposes of producing child pornography;
    c. Identify persons transmitting any visual depiction of minors engaged in sexually explicit conduct.

5. Books, ledgers and records bearing on the production, reproduction, receipt, shipment, orders requests, trades, purchases or transactions of any kind involving the transmission of any visual depiction of minors engaged in sexually explicit conduct.

6. Address books, mailing lists, supplier lists, mailing address labels and any and all documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connection with the

purchase, sale, trade or transmission of any visual depiction of minors engaged in sexually explicit conduct.

7. Address books, names, lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct.

8. Diaries, notebooks, notes and other records reflecting personal contact and other activities with minors visually depicted while engaged in sexually explicit conduct.

9. Materials and photographs depicting sexual conduct between adults and minors.

10. Records evidencing occupancy or ownership of the premises known and described as including, but not limited to, utility and telephone bills, mail envelopes or addressed correspondence.

11. Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes and handwritten notes in computer manuals.

12. Any and all records, documents, invoices and materials that concern any Internet accounts.

13. Any of the items described in paragraphs 1-12 above that are stored in the form of magnetic or electronic coding on computer media, or media capable of being read by a computer, with the aid of computer related equipment, including floppy diskettes, CD-ROMs, CD-Rs, CD-RWs, DVDs, fixed hard drives or removable hard disk cartridges, software or memory in any form. The search procedure for electronic data contained in computer operating software or memory devices, where performed onsite or in a laboratory, or other controlled environment, may include the following techniques:

   a. The seizure of any computer or computer related equipment or data, including floppy diskettes, CD-ROMs, CD-Rs, CD-RWs, DVDs, fixed hard drives or removable hard disk cartridges, software or memory in any form containing material described above, and the removal thereof from the PREMISES for analysis by authorized personnel;
   b. Surveying various file "directories" and the individual files they contain (analogous to looking that the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);
   c. "Opening" or cursorily reading the first few pages of such files in order to determine their precise contents;
   d. "Scanning" storage areas to discover and possibly recover recently deleted data;

e. Scanning storage areas for deliberately hidden files; or
f. Performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation. Keywords include words relating to pornography, sex, genitalia, intercourse and topics relating to teen and pre-teen activities.